1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WENDY RIVERA,

              Plaintiff,

    v.

ROBERT GATES, et al.,

              Defendants.

Case No.  C09-5355RJB

ORDER ON FEDERAL
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
ORDER TO SHOW CAUSE

       This matter comes before the court on the Federal Defendant's Motion for Summary Judgment.  Dkt. 24.  The court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

PROCEDURAL HISTORY

       On June 15, 2009, plaintiff filed this civil action.  Dkt. 1.  On June 17, 2009, plaintiff filed an Amended Complaint against defendants Robert Gates, Secretary, U.S. Department of Defense; the United States, acting through its U.S. Dept. Of Defense; Alan Thompson, Director, Defense Logistics Agency; U.S. Defense Logistics Agency; Pete Geren, Secretary, U.S. Army; and Darwin Armajo and Jane Doe Armajo.  Dkt. 4.  The Amended Complaint alleges that plaintiff is an employee of defendants, working at Ft. Lewis.  Plaintiff alleges that she was a victim of ongoing, unlawful, pervasive, and offensive discrimination, and retaliation for opposing discriminatory practices, and

1    suffered humiliation, abuse, adverse employment consequences, injury, and emotional distress.  Dkt.

2    4, at 5.  The Amended Complaint alleged claims for violation of Title VII of the Civil Rights Act of

3    1964, 42 U.S.C. §§ 2000e-2, 2000e-3; negligent and intentional infliction of emotional distress;

4    invasion of privacy and intrusion upon seclusion; and negligent supervision and retention.  Dkt. 4 at

5    8.

6          On June 18, 2009, the Clerk issued summons as to the Federal defendants, and for Darwin

7    Armajo and Jane Doe Armajo.  *See* Docket.  On June 22, 2009, counsel appeared on behalf of Robert

8    Gates (in his official capacity only), United States, U.S. Department of Defense, Alan Thompson (in

9    his official capacity only), U.S. Defense Logistics Agency, and Pete Geren (in his official capacity

10    only). (Federal defendants).  Dkt. 6. There is no certificate of service in the record showing that Mr.

11    Armajo or Jane Doe Armajo have been served; neither of these defendants has appeared in this

12    action.

13          On September 11, 2009, the court issued an order, granting the Federal defendants' motion

14    for partial dismissal.  Dkt. 12.  By the terms of that order, the court limited the claims in this matter

15    against the Federal defendants to the Title VII claims against Secretary of the Army Pete Geren in his

16    official capacity; all claims against the federal defendants other than the Title VII claims were

17    dismissed.  The September 11, 2009, order did not address any claims plaintiff may have against Mr.

18    Armajo or Jane Doe Armajo; these defendants have not appeared in this case, nor have certificates of

19    service been filed showing that they have been served.  It is unclear whether plaintiff is pursuing

20    claims against these individual defendants, since service has not been timely effected under

21    Fed.R.Civ.P. 4(m).

22                        <u>MOTION FOR SUMMARY JUDGMENT</u>

23          On April 20, 2010, the Federal defendants filed a motion for summary judgment, contending

24    that (1) four of plaintiff's claims are unexhausted and therefore should be dismissed; (2) plaintiff

25    cannot establish a *prima facie* claim for sex discrimination because there are no adverse employment

26    actions, and plaintiff cannot establish discriminatory animus; and (3) plaintiff cannot establish a

27    claim for retaliation because there are no adverse employment actions, and plaintiff cannot establish a

28    causal connection between the alleged protective activity and any employment actions. Dkt. 24.

1    Plaintiff has not responded to the federal defendants' motion for summary judgment, and, in

2    accord with W.D. Wash. Local Civil Rule 7(b)(2), the court deems the failure to respond to be an

3    admission that the motion has merit.

4                                          SUMMARY JUDGMENT STANDARD

5    Summary judgment is proper only if the pleadings, the discovery and disclosure materials on

6    file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

7    is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is entitled to

8    judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an

9    essential element of a claim in the case on which the nonmoving party has the burden of proof.

10   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where

11   the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party.

12   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must

13   present specific, significant probative evidence, not simply "some metaphysical doubt.").  *See also*

14   Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient

15   evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing

16   versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service*

17   *Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

18   The determination of the existence of a material fact is often a close question.  The court must

19   consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a

20   preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect. Service*

21   *Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the

22   nonmoving party only when the facts specifically attested by that party contradict facts specifically

23   attested by the moving party.  The nonmoving party may not merely state that it will discredit the

24   moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the

25   claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.  Conclusory, non

26   specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."  *Lujan*

27   *v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

28

<u>RELEVANT FACTS</u>

Plaintiff was hired as a term motor vehicle operator, Army Directorate of Logistics (DOL), Transportation Motor Pool (Motor Pool), in 2001. Since 2002, the Army has continuously extended her employment, and the plaintiff remains employed as a Motor Pool driver at Fort Lewis (now Joint Base Lewis-McChord).

In her amended complaint, Ms. Rivera alleges that, in 2006, she was a witness in the investigation of EEOC complaints by other employees.  Dkt. 4, at 3. Ms. Rivera contends that an EEOC representative made inappropriate sexual comments on the basis of her gender, concerning Ms. Rivera's wearing of female-looking attire and makeup while working in a male-dominated truck-driving position at Ft. Lewis.  Dkt. 4, at 3.

On February 16, 2007, while working for DOL, Ms. Rivera drove a truck into a bridge overpass on post. She was scheduled for remedial training, and she was not permitted to drive until she completed that training on March 2, 2007, at which time she was returned to driving duties. During the time that she was not permitted to drive, Ms. Rivera worked as a dispatcher for the Motor Pool. Plaintiff alleges that she lost overtime pay that she claims she could have earned as a driver during the period when she was not permitted to drive.

An investigation was initiated as a result of Mr. Rivera's accident.  The investigator recommended that Ms. Rivera be found financially liable for the damage she caused to the government truck because in his view she had been negligent in driving her truck under a bridge overpass that was too low for the height of the truck. Plaintiff received a "Financial Liability Investigation of Property Loss" notice. Along with that notice, DOL advised Ms. Rivera of her right to contest the recommendation of the investigator, including the right to submit a rebuttal. Ms. Rivera retained an attorney, who submitted a rebuttal on her behalf.  On May 15, 2007, the director of the DOL issued a "Notice of Relief of Liability." On May 15, 2007, DOL informed Ms. Rivera that she was relieved of responsibility for the property damage. Dkt. 24-3, at 61-62; Dkt. 24-9, at 2.

On January of 2007, March of 2008, and September of 2009, Ms. Rivera received the highest rating on her performance evaluations.  Dkt. 24-2, at 3. Dkt. 24-3, at 3-9.

On April 24, 2007, Ms. Rivera initiated the EEO process in connection with the February,

1   2007 motor vehicle accident on April 24, 2007. Dkt. 24-10, at 2-23.  On May 31, 2007, Ms. Rivera

2   filed a formal EEO complaint of discrimination with the Army. Dkt. 24-10, at 3, and 6-10.

3          On June 13, 2007, Ms. Rivera's attorney was notified that the following issues were accepted

4   for investigation: (1) Ms. Rivera was cited for simple negligence and received a Financial Liability

5   statement for the accident when male drivers involved in accidents which led to a Report of Survey

6   were not found negligent, charged and required to rebut the findings of the investigation; (2) Ms.

7   Rivera's licence was pulled from February 21, 2007 - March 3, 2007, causing her to lose pay, when

8   male drivers went back to driving after driving accidents within one or two days; (3) Ms. Rivera was

9   told on March 2, 2007, to report for a second remedial training when male drivers had to go to one

10  remedial training after accidents; (4) After this one accident her work was subjected to extraordinary

11  scrutiny and criticism when male drivers who had had accidents were not subjected to the same

12  heightened scrutiny; (5) Ms. Rivera was subjected to a fraudulent effort by Ms. Robin Clark to make

13  it look as if the accident was Ms. Rivera's fault; and (6) Ms. Clark retaliated against and harassed

14  Ms. Rivera when Ms. Clark reported to the Ft. Lewis EEO Office on February 23, 2007, that Ms.

15  Rivera and Ms. Anita Guerrero were harassing and retaliating against Ms. Clark for Ms. Clark's prior

16  protected EEO activity.  Dkt. 24-10, at 12-13.

17         Ms. Rivera testified in her deposition that, on July 2, 2007, co-worker Darwin Armajo aimed

18  a camera at her chest and took a photo of her breasts as she was sitting at a desk on the other side

19  of a divide in the TMP dispatch office.4.  Dkt. 24-3, at 25-31. Ms. Rivera called her supervisor, Carlo

20  Sallinger, who ordered that Mr. Armajo's timecard be pulled so that he could not leave the base. Dkt.

21  24-3, at 32, 33-34. Mr. Sallinger met with Ms. Rivera the day of the alleged incident. Dkt. 24-3, at

22  35-36. After his meeting with Ms. Rivera, Mr. Sallinger ordered that Mr. Armajo report the next day

23  of work at a different time and at Mr. Sallinger's office so as to avoid contact with Ms. Rivera. Dkt.

24  24-3, at 37-38.

25         Mr. Sallinger consulted with the base EEO office on July 3, 2007.  He was told that, due to

26  Mr. Armajo's pending EEO claim,  "no action could be taken against Mr. Armajo at that time and

27  that we would have to separate the employees until the situation can be further investigated or looked

28  at...." Dkt. 24-11, at 9.  Mr. Sallinger understood from the EEO that he was to schedule "the two

employees for different time periods and missions." Ms. Rivera testified in her deposition that she spoke again to Mr. Sallinger on July 3, 2007, and that he told her that EEO had advised him that Mr. Armajo could not be removed from the workplace. Dkt. 24-3, at 40-41.

Ms. Rivera and Mr. Armajo were kept separate for the next two days after the alleged incident. Dkt. 24-3, at 42. The third day, Mr. Armajo "was allowed to come work back at the North Fort Motorpool with me." Dkt. 24-3, at 42. Ms. Rivera testified that she asked Mr. Sallinger that she and Mr. Armajo be separated until the investigation was finished, with Ms. Rivera working out of a different building than Mr. Armajo, but that Mr. Sallinger told her no. Dkt. 24-3, at 43-44. Ms. Rivera stated as follows:

Q. And did he give you an explanation?

A. No. And that is why it was hard for me to understand why. Why would he tell me no? I had worked in there in the past. If he wasn't–if it wasn't discrimination, why would he–why was he telling me no now? And I've worked in the past over there. I knew some of the duties over there, but it wasn't even an option.

And also, which–I don't know if it's jumping ahead, but on the 23rd when I was off, so he still–

Q. What 23rd? June, July?

A. July.

Q. Okay.

A. When he disagreed to relocate me and told me I had to work there, that's when I decided, I asked him if I could just take two weeks off until I could figure out what I was going to do. I didn't know if I was eligible for any kind of a stress pay or –or I just didn't want–I wanted to make sure I was off on a legal term.

Dkt. 24-3, at 44-45.

On July 3, 2007, July 5, 2007, and July 12, 2007, Ms. Rivera submitted the following amendments to her pending EEO complaint: (1) "in reprisal for previous EEO complaint, her supervisor (Mr. Carlo Sallinger) failed to protect her from further harassment by failing to remove coworker from her work are after she caught him secretly taking pictures of her breast"; and (2) "sexual harassment when Mr. Darwin Armajo...was caught in the act of sneaking photographs of her breast." Dkt. 24-10, at 18.

Plaintiff returned to work in August, 2007. Mr. Armajo, who had been employed as a motor vehicle operator, resigned on August 21, 2007, during the Army 's investigation of Ms. Rivera's

1    allegations. He was rehired in December, 2008 and now works as a supply technician.

2          Ms. Rivera has filed no other formal EEO complaints of discrimination other than the May

3    2007 complaint. She has not initiated contact with an EEO counselor in connection with any other

4    perceived act of discrimination or retaliation.

5                                    DISCUSSION

6    **1. Title VII**

7          Under Title VII of the Civil Rights Act of 1964, it is unlawful "for an employer– (1) to fail or

8    refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with

9    respect to his compensation, terms, conditions, or privileges of employment, because of such

10   individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1). Title VII is the

11   exclusive, preemptive remedy for federal employment discrimination. *Brown v. General Services*

12   *Administration*, 425 U.S. 820, 829 (1976).

13   **2. Exhaustion of Administrative Remedies**

14         The Federal defendants contend that the following claims, to the extent that Ms. Rivera

15   intends to pursue those claims in this action, are barred because these claims were not properly

16   exhausted: (1) Ms. Rivera's January through February, 2009, paychecks were issued several weeks

17   late because she was dropped out of the system; (2) Ms. Rivera is due a wage step increase; (3) After

18   returning to work in 2010 after a back injury she suffered in December, 2009, Ms. Rivera was sent

19   home in January of 2010, and not allowed to work for a week; and (4) In the last year and a half, Ms.

20   Rivera applied for three jobs on base and had no response.  These issues were raised in Ms. Rivera's

21   deposition.

22         To establish federal subject matter jurisdiction, a  plaintiff is required to exhaust his or her

23   administrative remedies before seeking adjudication of a Title VII claim. *B.K.B. v. Maui Police*

24   *Dep't*, 276 F.3d 1091, 1099 (9th Cir.2002). Under Title VII, a plaintiff must exhaust her

25   administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency,

26   thereby affording the agency an opportunity to investigate the charge.  *B.K.B. v. Maui Police*

27   *Dept.,*276 F.3d 1091, 1099 (9th Cir. 2002) (*citing* 42 U.S.C. § 2000e-5(b)).  The language of EEOC

28   charges are construed with utmost liberality since they are made by those unschooled in the

technicalities of formal pleading. *Id.* at 1100 (*internal citation omitted*). "The crucial element of a charge of discrimination is the factual statement contained therein. Allegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Id.* (*internal citation omitted*).

Ms. Rivera has submitted no evidence that she exhausted the four claims identified above. Accordingly, to the extent she is raising these claims in this proceedings, the court should grant the federal defendants' motion for summary judgment and dismiss these claims for lack of jurisdiction.

### 3. Discrimination on the Basis of Sex

In her amended complaint, plaintiff alleges that she was discriminated against on the basis of sex. The Federal defendants contend that Ms. Rivera did not suffer an adverse employment action; and that Ms. Rivera has not shown discriminatory animus.

In order to prevail on a Title VII claim of discrimination, a plaintiff must first establish a prima facie case of discrimination consisting of the following elements: (1) plaintiff belongs to a protected class; (2) plaintiff was performing his job according to the employer's legitimate expectations; (3) plaintiff suffered an adverse employment action; and (4) other employees with qualifications similar to plaintiff's were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Vasquez v. County of Los Angeles*, 307 F.3d 884, n. 5 (9th Cir. 2002). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment decisions. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802. Once the defendant satisfies this burden, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for a discriminatory motive. *Id.* at 804.

To succeed on a Title VII discrimination claim, the plaintiff must show that her employer has taken an adverse action that materially affects the compensation, terms, conditions, or privileges of the her employment." *See Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir.2000). Ms. Rivera has not shown that she suffered any adverse employment action. After she complained of the camera incident with Mr. Armajo, Ms. Rivera's supervisor kept them apart and

adjusted Mr. Armajo and Ms. Rivera's schedules, although he did not transfer Ms. Rivera to another building, as she had requested.  Ms. Rivera has not shown that she was subjected to any adverse action.  Further, Ms. Rivera has not shown that she was adversely treated because of her gender.  Ms. Rivera has not stated a prima facie case of gender discrimination, in violation of Title VII. Accordingly, the Federal defendants' motion to dismiss her gender discrimination claim should be granted.

### 4.  Retaliation for Protected Activity

In the amended complaint, Ms. Rivera contends that she was retaliated against for her participation in the EEO process.  The Federal defendants maintain that Ms. Rivera did not suffer an adverse employment action; and that there was no causal connection between the alleged protected activity and any adverse employment action.

To establish a retaliation claim under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (*citing Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir.1997)).  At that point, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Id.*

"The causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two." *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004); *See e.g. Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (holding that sufficient evidence of causation existed where adverse employment action occurred less than three months after the protected activity); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731-32 (9th Cir.1986) (concluding that there was adequate evidence of a causal link where the retaliatory action occurred less than two months after the protected activity).

To succeed on a Title VII retaliation claim, the plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

*Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006); *see also Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir.2000).

Even if Ms. Rivera engaged in protected activity in 2006, during the EEO process, she has not shown any adverse action that occurred as a result of that protected activity, since she received the highest ratings in her performance evaluations from 2007 through 2009; she retained her job; and her supervisor responded to her concerns about Mr. Armajo and tried to address them. Ms. Rivera has also not shown evidence that there was any retaliatory motive in her arguably delayed return to driving after her accident and lost opportunity for overtime. The Federal defendants' motion for summary judgment should be granted with regard to Ms. Rivera's claim of retaliation under Title VII.

### 5. Claims against Darwin Armajo and Jane Doe Armajo

Ms. Rivera has not filed a certificate of service showing that Mr. and Mrs. Armajo have been served in this matter. Neither Mr. nor Mrs. Armajo has appeared.

Fed.R.Civ.P. 4(m) provides as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

More than 120 days have passed since the complaint was filed on June 15, 2009. Ms. Rivera should be ordered to show cause why the claims against Mr. and Mrs. Armajo should not be dismissed.

Therefore, it is hereby

**ORDERED** that the Federal Defendant's Motion for Summary Judgment (Dkt. 24) is **GRANTED**. All claims against the Federal defendants are **DISMISSED WITH PREJUDICE**. Not later than May 28, 2010, Ms. Rivera is **ORDERED** to show cause why the claims against Darwin Armajo and Jane Doe Armajo should not be dismissed pursuant to Fed.R.Civ.P. 4(m) for failure to timely serve these defendants. If Ms. Rivera fails to respond to this order to show cause, or if she otherwise fails to show cause, the court may dismiss the claims against these defendants without prejudice.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 14th day of May, 2010.

Robert J. Bryan
United States District Judge

ORDER
Page - 11